IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

MANUELA ITHIER,

       Plaintiff,

v.                                        CASE NO. 1:11-cv-238-GRJ

MICHAEL J ASTRUE, Commissioner
of Social Security,

       Defendant.

_____/

## O R D E R

Plaintiff appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying Plaintiff's applications for disability insurance benefits and supplemental security income pursuant to Titles II and XVI of the Social Security Act (the Act).  (Doc. 1.)   The Commissioner has answered, and both parties have filed briefs outlining their respective positions.  (Docs. 10, 14, 15.)  The parties have consented to have the undersigned U.S. Magistrate Judge conduct all proceedings in this case. (Docs. 8, 9.)  For the reasons discussed below, the Commissioner's decision is **AFFIRMED**.

## I. PROCEDURAL HISTORY

Plaintiff filed applications for disability insurance benefits under Title II of the Social Security Act (the "Act") and supplemental security income benefits under Title XVI of the Act on January 10, 2005 alleging a disability due to carpal tunnel syndrome beginning December 15, 2004. (R. 233-39.)   Plaintiff's applications were denied initially and upon reconsideration.  (R. 76-78, 80-82.)  An administrative hearing was held

before an Administrative Law Judge ("ALJ") on February 14, 2007, and on May 9, 2007, and the ALJ issued a written decision finding that Plaintiff was not disabled. (R. 43-49.) The Appeals Council reversed and remanded the decision, and consolidated the remanded claims with Plaintiff's subsequent claims filed on October 1, 2007. (R. 107-11.) The ALJ conducted a second hearing on December 18, 2008, and denied Plaintiff's claims on July 31, 2009. (R. 16-23.) The Appeals Council denied review on September 14, 2011. (R. 5-8.) Plaintiff then filed her Complaint in this case on November 7, 2011 (Doc. 1.)

## II. STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[1] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[2]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[3] The district court must view the evidence as a whole,

---

[1] *See* 42 U.S.C. § 405(g) (2000).

[2] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); *accord,* Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[3] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

taking into account evidence favorable as well as unfavorable to the decision.[4] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[5]

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[6] The impairment must be severe, making Plaintiff unable to do his previous work, or any other substantial gainful activity which exists in the national economy.[7]

The ALJ must follow five steps in evaluating a claim of disability.[8] First, if a claimant is working at a substantial gainful activity, he is not disabled.[9] Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does

---

[4] Foote, 67 F.3d at 1560; *accord,* Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

[5] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[6] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505 (2005) (All further references to 20 C.F.R. will be to the 2005 version unless otherwise specified.).

[7] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[8] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[9] 20 C.F.R. § 404.1520(b).

not have a severe impairment and is not disabled.[10]  Third, if a claimant's impairments

meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is

disabled.[11]  Fourth, if a claimant's impairments do not prevent him from doing past

relevant work, he is not disabled.[12]  Fifth, if a claimant's impairments (considering his

residual functional capacity ("RFC"), age, education, and past work) prevent him from

doing other work that exists in the national economy, then he is disabled.[13]

The burden of proof regarding the plaintiff's inability to perform past relevant

work initially lies with the plaintiff.[14]  The burden then temporarily shifts to the

Commissioner to demonstrate that "other work" which the claimant can perform

currently exists in the national economy.[15]  The Commissioner may satisfy this burden

by pointing to the Medical-Vocational Guidelines (the "Grids") for a conclusive

---

[10] 20 C.F.R. § 404.1520(c).

[11] 20 C.F.R. § 404.1520(d).

[12] 20 C.F.R. § 404.1520(e).

[13] 20 C.F.R. § 404.1520(f).

[14] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987); *see also* Doughty v. Apfel, 245 F. 3d 1274, 1278 (11th Cir. 2001).

[15] Doughty, 245 F.3d at 1278 n.2. In Doughty the court explained this burden shifting as follows:

In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform.  In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.) (Internal citations omitted).

determination that a claimant is disabled or not disabled.[16]

However, the ALJ should not exclusively rely on the Grids when "the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion."[17]  In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[18]

The ALJ may use the Grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[19]  Such independent evidence may be introduced by a Vocational Expert's ("VE") testimony, but this is not the exclusive means of introducing such evidence.[20]  Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.

---

[16] Walker, 826 F.2d at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.").

[17] Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996). *See* Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker, 826 F.2d at 1003 ("The grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation.").

[18] Walker, 826 F.2d at 1003.

[19] Wolfe, 86 F.3d at 1077-78.

[20] *See id.*

### III.  <u>SUMMARY OF THE RECORD</u>

### A.  <u>Relevant Medical Records</u>

Plaintiff alleged that she was injured in 2001 while working at Burger King, when she was lifting a basket of french fries.  In January 2002, she was treated at the Ocala Orthopaedic Group for carpal tunnel syndrome.  (R. 373.)  She was treated in 2003 at Shands for de Quervain's tensosynovitis, and records from November 2003 indicate some improvement in her symptoms.  (R. 376.)  Plaintiff was treated by Drs. Demmi and Medero from January 2003 to June 2004 for wrist pain, and was placed on restrictive duty at work, though a physical examination in June 2004 revealed a full range of motion in her right arm.  (R. 439.)

Plaintiff was treated for asthma at the Monroe Regional emergency room in September 2004.  (R. 492-94.)  Plaintiff was again treated at Monroe Regional for dyspnea and asthma in May 2006.  (R. 489-91.)  From October 2006 to November 2006, Plaintiff was treated by Thomas Mohan, ARNP for asthma, hypertension, sleep apnea, and carpal tunnel syndrome.  (R. 508-09.)  In November 2006, Plaintiff was treated by Dr. Kim for mild carpal tunnel syndrome and sleep apnea.  (R. 515-20.)  Dr. Kim also treated Plaintiff for sleep apnea in January 2007.  (R. 544.)  In January and February 2007, Dr. Reddy treated Plaintiff for carpal tunnel syndrome and chest pain, and in May 2007 Plaintiff returned to ARNP Mohan for treatment for asthma.  (R. 550-71, 579-90.)  Plaintiff's asthma treatment with ARNP Mohan continued until May 2008.

On March 25, 2005, Dr. Lawrence Field evaluated Plaintiff on behalf of the state

agency. (R. 474-76.) Dr. Field diagnosed Plaintiff with hypertension, morbid obesity, functional illiteracy, and right elbow and wrist pain, but found no mental or physical impairments. On September 28, 2005, Dr. Raju examined Plaintiff on behalf of the state agency. (R. 495-99.) Dr. Raju diagnosed Plaintiff with diabetes, hypertension, asthma, joint pain, obesity, and post-carpal tunnel syndrome. He found that Plaintiff had a normal gait, with no difficulties getting on or off the exam table, and found that Plaintiff had a normal range of motion in her hands with normal hand grip and dexterity. (R. 498.)

Dr. Gona examined Plaintiff on behalf of the state agency on March 6, 2008. (575-78.) Dr. Gona diagnosed Plaintiff with asthma, sleep apnea, hypertension, degenerative joint disease, GERD, and right forearm pain. Dr. Gona found that Plaintiff had a normal gait, with mild limping on the right leg, and found that Plaintiff had a normal hand grip, with normal dexterity and fine manipulation of the hands. (R. 576.)

ARNP Mohan completed a Functional Capacity Evaluation for Plaintiff on July 28, 2008. (R. 623.) Mohan opined that Plaintiff was limited to lifting five pounds occasionally, and was limited to rarely pushing or pulling, climbing, gross and fine manipulation, bending and stooping, and reaching. Mohan opined that Plaintiff's impairments would frequently interfere with her concentration at work, and that she would need to lay down and elevate her legs throughout the day.

More than three months after the conclusion of the December 2008 hearing before the ALJ, Plaintiff was treated at the Centers for depression in March and April 2009. (R. 625-33.) Plaintiff was diagnosed with a mood disorder, and was prescribed

medication for depression in March 2009, and that the treating nurse Heidi Crowe recommended that Plaintiff participate in substance abuse counseling and therapy. (R. 632.) When Plaintiff returned in April 2009, she reported that the "meds are helping" and that she was no longer crying for no reason, and that she was sleeping well. (R. 625.) In April 2009, Plaintiff was treated by John Grooms for bilateral knee arthritis, and prescribed injections. (R. 624.)

### B.  Summary of Hearing Testimony

At the second hearing before the ALJ, Plaintiff testified as to her past work as a food packager, as a food preparer at Burger King, and as a cashier at Dollar General at One Stop Convenience Center. In response to the ALJ's inquiry as to her "most serious impairment," Plaintiff responded that asthma was the most severe impairment. (R. 704.) The ALJ noted that Plaintiff had not listed asthma as an impairment on her initial application for benefits, and inquired as to Plaintiff's treatment for asthma and other breathing issues. Plaintiff testified that her next most significant impairment was carpal tunnel syndrome. (R. 706.) She further testified that she was treated for arthritis, blood pressure, and diabetes. (R. 707.) Both the ALJ and Plaintiff's attorney questioned Plaintiff about her pain and breathing problems. At the conclusion of Plaintiff's attorney's questioning, the attorney asked Plaintiff "if there is anything that I haven't asked you about that the Judge would need to know before he makes a decision on why we're here today." (R. 729.) Plaintiff responded "No," and stated that "I think we've covered everything." *Id.*

After Plaintiff's testimony, the ALJ questioned vocational expert Donna Mancini

regarding the classification of Plaintiff's prior work. Ms. Mancini opined that a hypothetical individual with Plaintiff's limitations could perform a cashier position and a hand packager position as Plaintiff actually performed those jobs. (R. 738-740.) She also listed several examples of other work that exists in the national economy that the hypothetical person could perform, including ticket seller, hospital television rental clerk, and call out operator. (R. 741.)

At the conclusion of the hearing, the ALJ stated that the evidentiary record would be closed. (R. 745, 746.) Plaintiff's attorney did not request that the record remain open for the submission of any additional evidence.

## C. <u>Findings of the ALJ</u>

The Plaintiff's medical history as summarized by the ALJ is not in dispute. The Commissioner adopts the facts as set forth by the ALJ with regard to Plaintiff's medical treatment and vocational history. (Doc. 15, at 3.) The ALJ's findings reflect the following. The ALJ found that Plaintiff had not engaged in substantial gainful activity since December 15, 2004. (R. 17.) The ALJ noted that Plaintiff worked after the alleged disability onset date, but that her reported income did not rise to the level of substantial gainful activity.

The ALJ found at step two that Plaintiff had the following severe impairments: asthma, status-post right carpal tunnel surgery, and bilateral knee pain. (R. 17.) The ALJ also found that while Plaintiff had been diagnosed with non-insulin dependent diabetes mellitus, obstructive sleep apnea, and hypertension, these conditions were

well-controlled with medication and a CPAP device.  (R. 18.)  At step three, the ALJ

found that Plaintiff did not have an impairment or combination of impairments that met

or equaled the listings.  (R. 18.)

At step four, the ALJ determined that Plaintiff has the residual functional capacity

to perform light work, with the following restrictions: limited to occasional crawling; must

avoid climbing of ropes and scaffolds, and of ladders exceeding six feet; limited to

occasional pushing/ pulling with the lower bilateral extremities including the operation of

pedals, unless the pedal requires less than five pounds; occasional overhead reaching

and pushing/ pulling with the upper right extremity; must avoid prolonged exposure (6

hours of an 8-hour shift) to temperatures greater than 90 degrees Fahrenheit, joined

with wetness or humidity; must avoid moderate exposure (4 hours of an 8-hour shift) to

fumes, dusts, and gases; must avoid unprotected heights.  (R. 18.)

In determining Plaintiff's RFC, the ALJ first considered Plaintiff's testimony at the

hearing.  Plaintiff was 48 years old at the time of the hearing, and had previously

worked as a food packager and cashier.  She testified that she suffered shortness of

breath and chest pain from her asthma, pain and swelling in both hands from carpal

tunnel syndrome, and pain in her knees due to her recently-diagnosed bilateral knee

arthritis.  Plaintiff testified that her symptoms prevent her from performing daily activities

such as preparing meals, completing household chores, and taking care of her personal

needs.

With respect to Plaintiff's asthma, the ALJ noted that while Plaintiff's primary

care physician diagnosed her with asthma, medical records indicated a clear x-ray of

Plaintiff's lungs, and Plaintiff reported that her asthma was stable and controlled by medication.  (R. 19.)  With respect to Plaintiff's carpal tunnel syndrome, the ALJ referenced records from Medero Medical that disclosed a full range of motion in the right arm.  The ALJ also referenced consultative examinations by Lawrence Field and Vasantha Gona, who found the Plaintiff had normal fine manipulation abilities.  (R. 19.)  With respect to Plaintiff's knee pain, the ALJ found that the medical record "includes evidence strongly suggesting that the claimant has exaggerated her symptoms and limitations."  (R. 19.)  The ALJ referenced records from Monroe Regional Medical Center that showed mild degenerative changes, as well as consultative examinations from Dr. Dantuluri P. Raju and Dr. Gona that noted that Plaintiff had a normal gait.  (R. 19-20.)  The ALJ also referenced a consultative examination by Dr. Andrew Petrella, who found only mild degenerative changes in Plaintiff's knees.  (R. 20.)

The ALJ considered the opinion of Dr. Thomas Mohan,[21] consultative physician, but gave it little weight because the ALJ determined that the limitations identified by Dr. Mohan were inconsistent with the overall medical evidence and inconsistent with Plaintiff's testimony at the hearing.  The ALJ also considered the opinion of state agency physician Dr. Gloria Hankins, and gave that opinion "some" weight.  (R. 20.)

The ALJ determined that Plaintiff was able to perform her past relevant work as a hand packager and cashier, as they were actually performed.  (R. 21.)  The ALJ relied on the testimony of vocational expert Donna Mancini, who opined that in addition to

---

[21]While the ALJ referred to Thomas Mohan as a doctor, it appears from the medical records that he is actually a registered nurse practitioner.  (R. 579.)

these two unskilled, sedentary jobs, Plaintiff could perform "11,919 additional jobs in the light and sedentary levels." (R. 22.) Finally, the ALJ found that while Plaintiff had previously used illicit drugs, it was unnecessary to determine if drug abuse was a material contributing factor to the adjudication of disability, in light of the finding of no disability. (R. 22.)

Plaintiff contends that the ALJ erred because 1) the ALJ failed to articulate good cause for not crediting the opinion of Mr. Mohan, who opined that Plaintiff's limitations were more severe than noted in the RFC; 2) the ALJ failed to explain why he was not crediting the opinion of the state agency medical expert, Dr. Hankins; and 3) the ALJ failed to analyze Plaintiff's alleged mental impairment, despite records submitted after the hearing that indicated that Plaintiff was treated for depression.

## IV. Discussion

### A. The ALJ Gave Appropriate Weight to the Opinion of Thomas Mohan

Plaintiff argues that the ALJ erred by failing to articulate good cause for not crediting the opinion of Thomas Mohan, who treated Plaintiff for asthma and referred her to Dr. Reddy for further treatment. (R. 579-90, 550-71.) In July 2008, Mohan completed a Functional Capacity Evaluation for Plaintiff, and opined that Plaintiff would be limited to lifting five pounds occasionally, could stand or walk no more than one hour in an eight-hour workday, and could rarely do any pushing or pulling, climbing, gross or fine manipulation, bending, stooping, reaching, or operating a motor vehicle. As previously noted, while the ALJ referred to Mohan as a physician, the medical records indicate that he is actually a registered nurse practitioner (ARNP).

In his opinion, the ALJ stated that he gave "little weight to Dr. Mohan's opinion because, not only is it inconsistent with the overall medical evidence, but it is also inconsistent with the claimant's allegations of limitations." (R. 20.) Plaintiff argues that the ALJ's reasons for discounting Mohan's opinions were "generic," and asserts that reversal is required in order for the ALJ to provide more specific reasons for discounting this opinion.

It is well-established that substantial or considerable weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless "good cause" is shown to the contrary.[22] If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.[23] The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory.[24] Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a

---

[22] Crawford v. Commissioner of Social Security, 363 F. 3d 1155, 1159 (11th Cir. 2004) (citing Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir.1997)) ("We have found 'good cause' to exist where the doctor's opinion was not bolstered by the evidence, or where the evidence supported a contrary finding. We have also found good cause where the doctors' opinions were conclusory or inconsistent with their medical records."). See also Edwards v. Sullivan, 937 F.2d 580, 583-584 (11th Cir. 1991); Sabo v. Commissioner of Social Security, 955 F. Supp. 1456, 1462 (M.D. Fla.1996); 20 C.F.R. § 404.1527(d).

[23] 20 C.F.R. § 404.1527(d)(2).

[24] Edwards, 937 F.2d at 584 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements).

claimant's impairments.[25]

Because Mohan is a nurse practitioner and not a treating physician, the ALJ was not required to evaluate his opinion as a treating physician's statement. Nurse practitioners are not an "acceptable medical source" who can offer medical opinions to establish an impairment.[26] However, the ALJ may consider evidence from nurse practitioners to show the severity of impairments or how it affects a claimant's ability to work.[27] Unlike treating physician evidence, the ALJ was not required to give any particular weight to Mohan's "other source" opinion.

Whether Mohan is a treating physician or a nurse practitioner, however, the Court, nonetheless, concludes that the ALJ properly evaluated his opinion and did not err in not assigning controlling weight to that opinion. Mohan's Residual Functional Capacity assessment is inconsistent with other record evidence, including other medical records and Plaintiff's testimony at the hearing about her impairments. While Mohan opined that Plaintiff could rarely push or pull with her arms and legs, and could rarely perform gross or fine manipulation, the ALJ correctly noted that medical records from Medero Medical indicated that Plaintiff had a full range of motion in her right arm and consultative examinations by Dr. Field and Dr. Gona indicated that Plaintiff had a normal grip strength in her hands and normal abilities to perform fine manipulation. (R.

---

[25] Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir.1986); see also Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir.1987).

[26] 20 C.F.R. § 404.1513.

[27] Id. at § (d)(2) ("we may also use evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work. Other sources include" social workers.)

576.)

Mohan's assessment of Plaintiff's abilities is also contradicted by Plaintiff's testimony at the hearing, in which she stated that she was able to stock small items in her position as a cashier, and was able to lift bakery pans during her work as a bakery helper.  In her role at the bakery, Plaintiff further testified that she was able to pack baked goods into small boxes and bags.  (R. 701-02.)  Finally, while Mohan opined that Plaintiff would need to lay down or elevate her legs periodically throughout the day to alleviate her pain, Plaintiff did not testify to this restriction and the restriction is unsupported elsewhere in the medical records.  Consultative examining physician Dr. Gona found that Plaintiff had a normal gait with only a mild limp on one leg, and Plaintiff's treating physician Dr. Petrella noted improvement in Plaintiff's knee pain with Hyalgan injections.  (R. 576, 619.)

The ALJ's decision to decline to assign controlling weight to the opinion expressed by Thomas Mohan regarding the effects of Plaintiff's impairments is supported by substantial evidence.  Accordingly, the Court concludes that the ALJ did not err in not assigning controlling weight to Mohan's opinion.  The Court further finds that the ALJ adequately specified why he gave little weight to that opinion, noting that Mohan's assessment was inconsistent with the record evidence and Plaintiff's testimony.

## B.  **The ALJ Did Not Err Regarding the Opinion of Dr. Gloria Hankins, a State Agency Doctor**

Dr. Gloria Hankins, state agency medical consultant, completed a Physical

Residual Functional Capacity Assessment form after reviewing Plaintiff's medical records. (R. 636-43.) Dr. Hankins opined that Plaintiff was limited to occasionally lifting 20 pounds, frequently lifting 10 pounds, and standing or walking for six hours out of an eight-hour workday. Dr. Hankins opined that Plaintiff could perform unlimited pushing and pulling, but was limited to occasional climbing, balancing, stooping, kneeling, crouching, and crawling. She also found that Plaintiff was limited in reaching in all directions, handling and fingering, and feeling. Specifically, Dr. Hankins found that Plaintiff would be limited to "frequent reaching, handling, fingering, & feeling." (R. 639.) The ALJ stated in his opinion that he gave "some weight" to Dr. Hankins' opinion, and summarized her findings. (R. 20.)

Plaintiff argues that the ALJ inadequately articulated reasons discounting Dr. Hankins' opinion. Specifically, Plaintiff contends that the ALJ should have incorporated Dr. Hankins' findings that Plaintiff was limited in her ability to reach in all directions and was limited in her abilities in fingering and feeling. (Doc. 14, at 15-16.) However, Dr. Hankins was a state agency physician who never personally examined Plaintiff. The ALJ therefore was not required to place controlling weight on her opinion. The Eleventh Circuit has "held that the 'reports of physicians who do not examine the claimant, taken alone, do not constitute substantial evidence on which to base an administrative decision.'" *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985) (quoting *Spencer ex rel. Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985)).

While Plaintiff argues that the ALJ erred by failing to include Dr. Hawkins' opinion

on her manipulative limitations, Plaintiff fails to note that in other areas, the ALJ actually included *more* limitations in the RFC than were reflected in Dr. Hawkins' report. For example, Dr. Hawkins opined that Plaintiff could engage in unlimited pushing and pulling, but the ALJ limited Plaintiff to occasional pushing and pulling with the lower bilateral extremities and occasional pushing and pulling with the upper right extremity. (R. 637, 18.) Similarly, while Plaintiff argues that the ALJ should have credited Dr. Hankins' opinion that Plaintiff was limited to frequent reaching, the ALJ actually stated in the RFC that Plaintiff was limited to occasional overhead reaching—a greater limitation than that suggested by Dr. Hankins. (R. 639, 18.) The ALJ was not required to credit Dr. Hankins' opinion that Plaintiff was limited to frequent fingering and feeling, particularly in light of the other medical evidence and Plaintiff's hearing testimony discussed above. The Court therefore concludes that the ALJ's review of Dr. Hankins' opinion is supported by substantial evidence.

### C.  The ALJ Did Not Err I Failing to Consider Plaintiff's Mental Impairment

As previously discussed, Plaintiff's testimony at the ALJ hearing in December 2008 focused on the following impairments: carpal tunnel syndrome, asthma, and knee pain. Plaintiff had not listed asthma as a disabling impairment in her initial application for benefits, and the ALJ asked her a number of questions about her treatment for asthma when the subject was raised at the hearing. (R. 704-06.) After discussing the effects of these impairments with both the ALJ and her counsel, Plaintiff engaged in the following discussion with her counsel:

COUNSEL: Manuela, do you think there is anything that I haven't asked
you about that the Judge would need to know before he makes a decision
on why we're here today, why you don't feel that you're capable of
working?

PLAINTIFF: No.

COUNSEL: Do you think we've covered everything?

PLAINTIFF: Yeah, I think we covered everything.

(R. 729.)  At the conclusion of the hearing, the ALJ asked Plaintiff's counsel if there was

any need for "post hearing development," and counsel stated that she was aware of no

such need.  (R. 745.)  The ALJ stated that he would close the evidentiary record at the

conclusion of the day's hearing and prepare his decision.  (R. 745, 746.)

Following the hearing, but prior to the ALJ's issuance of his decision in July

2009, the ALJ received nine pages of records reflecting Plaintiff's treatment for mental

health issues.  (R. 625-33.)  The records indicate that Plaintiff was treated for

depression at The Centers, Inc. on March 10, 2009 and April 27, 2009.  The records

indicate that Plaintiff self-reported that she attempted to commit suicide in November

2008 and was "in CSU," though there are no accompanying medical records related to

this suicide attempt.  (R. 631.)  The records do state that Plaintiff was prescribed

medication for depression in March 2009, and that the treating nurse Heidi Crowe

recommended that Plaintiff participate in substance abuse counseling and therapy.  (R.

632.)  When Plaintiff returned in April 2009, she reported that the "meds are helping"

and that she was no longer crying for no reason, and that she was sleeping well.  (R.

625.)

Plaintiff did not mention a suicide attempt or hospitalization at her December 2008 ALJ hearing, and never listed depression as a factor in her disability application. In her original 2007 ALJ hearing, Plaintiff stated that she was not being treated for depression.  (R. 678.)  There is no cover letter accompanying these documents available in the record, and therefore no record that Plaintiff or her counsel requested the ALJ to reopen the evidentiary record following the December 2008 hearing to include records of this new impairment.  There is also no record of Plaintiff's counsel's brief to the Appeals Council following the ALJ's decision—if such a brief was submitted—so the Court is unable to conclude that Plaintiff requested the Appeals Council to consider the mental health records.  Plaintiff now argues that the ALJ erred by failing to consider evidence of Plaintiff's mental impairment, and that this error justifies reversal and remand.

The Social Security regulations provide procedures for submitting evidence after the ALJ has concluded a hearing, but before the final decision is entered.  Generally, all medical evidence must be submitted within five business days prior to the hearing.  20 C.F.R. § 405.331(a).  If the claimant misses that deadline, and wishes

> to submit evidence after the hearing and before the hearing decision is issued, the administrative law judge will accept the evidence if you show that there is a reasonable possibility that the evidence, alone or when considered with the other evidence of the record, would affect the outcome of your claim, *and* . . . [s]ome other unusual, unexpected, or unavoidable circumstance beyond your control prevented you from submitting the evidence earlier.

20 C.F.R. § 405.331(c).  These regulations plainly apply to the mental health records in this case.  It does not appear, as no cover letter is included in the record, that Plaintiff

or her counsel made any effort to show that there was a reasonable probability that the mental health records would affect the outcome of Plaintiff's claim. Presumably the fact that the March and April 2009 records did not exist till after the hearing constitutes an "unavoidable circumstance" that prevented Plaintiff from submitting the evidence earlier. However, to this date there is no available record of Plaintiff's alleged November 2008 hospitalization for a suicide attempt other than a brief mention of the self-reported incident in the March 2009 treatment notes. This incident occurred prior to the December 2008 hearing, and Plaintiff has not provided any explanation, to the Appeals Council or to this Court, as to why she was unable to submit the records of her hospitalization to the ALJ. Plaintiff has also not explained why she never mentioned her treatment for depression and recent hospitalization to the ALJ at the December 2008 hearing, even when asked if there were any other impairments that she wished to discuss.

The Court finds that under these circumstances, because Plaintiff "did not meet the requirements at § 405.331 in submitting [these records] after the hearing had concluded, the ALJ was not required to consider that assessment in his opinion." *Passafiume v. Comm'r of Soc. Sec.*, No. 1:12-cv-0795, 2012 WL 5611501, at *9 (N.D. Ohio Nov. 15, 2012). This is not a case where the medical records in question related to an impairment that Plaintiff had already raised in her application or discussed at the hearing—rather, this was a completely new impairment. *Cf. Savo v. Astrue*, No. 3:10-cv-1612, 2011 WL 5025488 (D. Conn. Oct. 21, 2011) (finding that the ALJ should have considered late-submitted records that failed to comply with the requirements of §

405.331 because those records related to a worsening of an impairment that the ALJ had specifically found to be improving).  Nor was the ALJ under a duty to develop the record further with respect to Plaintiff's mental impairments.  *See Kitts v. Apfel*, 204 F.3d 785, 786 (8th Cir. 2000) ("Because [Plaintiff] did not allege a mental impairment in her application or at the hearing, and because the record shows only a diagnosis of anxiety and prescriptions for anti-anxiety medication . . . we find the ALJ was not on notice of a need to develop the record further in that regard.") (citing *Sullins v. Shalala*, 25 F.3d 601, 605 (8th Cir. 1994) for the proposition that the "ALJ ordinarily has no obligation to investigate claims not presented at the time of application or not offered at hearing").

Because the medical records at issue here pertain to Plaintiff's mental impairments, which were not raised in her initial application for benefits and were not raised at the ALJ hearing, the proper procedure here is for Plaintiff to file a new application for benefits based on mental impairments.  *See Kapusta v. Sullivan*, 900 F.2d 94, 94 (7th Cir. 1989) ("If [Plaintiff] has developed additional impairments since his first application for benefits, he may file a new application."); *Sanchez v. Sec'y of Health & Human Servs.*, 812 F.2d 509, 511-12 (where plaintiff's psychological condition was not at issue at the ALJ hearing, but Plaintiff presented evidence of mental deterioration following the hearing, such evidence "would be material to a new application" and plaintiff "followed the correct procedure by reapplying for benefits.").  Administrative res judicata arising from the instant claim would not bar a new application.  *See Gregory v.*

*Bowen*, 844 F.2d 664, 666 (9th Cir. 1988) ("Because [Plaintiff's new] application raised the new issue of psychological impairments, it would be inappropriate to apply res judicata to bar her claim.").

## V.  <u>CONCLUSION</u>

In light of the foregoing it is **ORDERED** that the decision of the Commissioner is **AFFIRMED**. The Clerk is directed to enter final judgment and close the file.

**DONE AND ORDERED** this 14th day of March 2013.

*s/ Gary R. Jones*

GARY R. JONES
United States Magistrate Judge